UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KEITH WARREN,<br><br>    Plaintiff,<br><br>v.<br><br>C/O POWERS, *et al.*,<br><br>    Defendants. | Case No.: 3:17-cv-00228-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 32 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion to File Second Amended Complaint (SAC). (ECF No. 32, proposed SAC at ECF No. 32-1.) Defendants filed a non-opposition. (ECF No. 35.)

After a thorough review, the court recommends that Plaintiff's motion to file the SAC (ECF No. 32) be granted, and that Plaintiff be allowed to proceed on certain claims in Counts I and II, but that Count III be dismissed with prejudice.

**I. AMENDMENT**

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A), (B). Otherwise, a party must seek the opposing party's written consent or leave of court to amend a pleading. Fed. R. Civ. P. 15(a)(2).

///

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend need not be given where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted).

The court finds that leave to amend (ECF No. 32) is proper under Federal Rule of Civil Procedure 15(a)(2); however, the court will now screen the proposed amended complaint to determine whether amendment would be futile in any regard.

## II. SCREENING

**A. Standard**

Under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915A(b)(1) tracks that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Proposed SAC**

The proposed SAC names the following defendants: Northern Nevada Correctional Center (NNCC) Warden Isidro Baca, Lovelock Correctional Center (LLC) Warden Renee Baker, Warm Springs Correctional Center (WSCC) Warden Quinten Byrne, LCC Caseworker D. Baze, Inspector General Pamela Del Porto, Nevada Department of Corrections (NDOC) Deputy Director SL Foster, WSCC Correctional Officer Kelly, NNCC Caseworker R. Mears, WSCC Correctional

Officer Powers, WSCC Lieutenant Ramirez, WSCC Caseworker Chandra Thomas, NDOC Deputy Director D. Tristan, and WSCC Gang Investigator/Officer Vidaurri.

**1. Count I**

In Count I, Plaintiff alleges that he was convicted of kidnapping and sexual assault of a minor. Due to the nature of his conviction, he was placed in protective custody housing in various NDOC institutions until about 2011 when he was reclassified to general population custody at Warm Springs and LCC. In 2014, he refused to enroll in WSCC's structured living program, claiming he could not perform the required exercises at his age. He avers that as a result of his refusal, on December 1, 2014, he was told he was being sent to Southern Desert Correctional Center (SDCC). He filed an emergency grievance asserting that this would put him in danger because of his sex offender status. Ramirez responded that this was not an emergency, and instructed him to submit a regular grievance. Later that day, Ramirez told Warren "now that you['re] scared to go to SDCC, maybe you'll feel like the scared child you kidnapped and molested," and that he hoped Plaintiff would get what he had had coming to him. Plaintiff was transferred to SDCC with three other sex offenders the following day, and was placed in general population. On December 3, 2014, he was attacked and severely assaulted by several security threat group (STG) gang members from the Aryan Warriors gang—a white supremacist gang that he claims specifically targets sex offenders. He was beaten and sustained injuries to his back. He was placed in protective segregation. (ECF No. 32-1 at 6-7.)

On December 11, 2014, he was transferred back to WSCC in general population. Powers began informing gang members known as the Norteños that Plaintiff was a sex offender pedophile and baby killer. Plaintiff asked Powers about this, and Powers told Plaintiff he had been a court

4

bailiff during Plaintiff's court proceedings. Powers told Plaintiff to "go back to his cell and hang himself, and do society a favor." (ECF No. 32-1 at 8.)

Between January and November of 2015, Plaintiff submitted numerous kites to Warden Greg Smith (not named a defendant) and Associate Warden Byrne, Associate Warden Wes Mattice (also not named a defendant), and Caseworker Thomas, explaining Powers' behavior, and asserting that this was putting Plaintiff in danger. The kites went unanswered. (ECF No. 32-1 at 8.)

In May of 2015, Plaintiff sent three kites to Vidaurri, also informing him of Powers' conduct. After the third kite, Vidaurri came to speak with Plaintiff and told him he would talk to one of the Norteño "shot callers" (leaders) named "Scrappy" to see what he could do about this dilemma. Plaintiff was then approached by Scrappy, and threatened with physical harm if he did not pay to remain at WSCC. Plaintiff immediately told Caseworker Thomas about Scrappy's threat. Thomas told Plaintiff she would look into it. The next day, Plaintiff spoke to Vidaurri and told him about Scrappy's threat. Vidaurri told Plaintiff he talked to Scrappy about working out a solution. Vidaurri told Plaintiff just to pay Scrappy, that it was "no big deal" and "it happens every day."

On May 15, 2015, Thomas approached Plaintiff and told him if he did not stop bothering her about the Norteños and sending kites about his imaginary fears she would write him up for threats and harassment, and put him on "front street" about the kites he had written about the Norteños and Scrappy. Plaintiff filed a grievance about Thomas' threats on May 16, 2015. Byrne responded to the informal level grievance on June 17, 2015, and stated in part, "placed a copy of that kite response in your file that you are being retaliated against." Plaintiff submitted his first level grievance on June 27, 2015, reiterating that Thomas was not protecting him from the Norteños. On August 19, 2015, Byrne responded, "you were answered correctly at the informal level." He filed a second level grievance on August 26, 2015, asserting a failure to protect from a

known threat. On October 14, 2015, SL Foster responded that Thomas had documented her concerns on a kite and advised Plaintiff to change his behavior. She stated there was no reason to have the Inspector General initiate an investigation. (ECF No. 32-1 at 8-10.)

On October 29, 2015, Thomas moved Plaintiff out of his unit 4A into unit 4B where most of the Norteños were housed. Plaintiff submitted an informal grievance on November 1, 2015, complaining that Thomas was retaliating against him for filing a grievance against her complaining about her failure to protect him. (ECF No. 32-1 at 10.)

The week of November 2, 2015, Plaintiff spoke to Vidaurri, and told him the Norteños were threatening him with physical harm because Powers and Thomas had told him Plaintiff was a child rapist and baby killer, and that the Norteños threatened that if he did not pay them he was going to be cut up. Vidaurri told Plaintiff to "grow a pair of balls" and that he had more important issues to deal with. Plaintiff submitted a grievance about Vidaurri's failure to protect him. (ECF No. 32-1 at 10.)[1]

On November 6, 2015, Plaintiff filed an informal grievance against Powers for informing the Norteños he was a child molester, baby killer and snitch. He also complained that Byrne, Thomas, Vidaurri and Powers were refusing to protect him and inciting violence against him. (ECF No. 32-1 at 11.)

On December 7, 2015, at 6:00 a.m., Correctional Officer Kelly opened Plaintiff's cell door and a Norteño gang member entered and began to beat Plaintiff by striking and punching him repeatedly in the face and head, causing him to lose consciousness. He woke up and was severely bleeding from his head. He pushed his cell intercom and Kelly asked what he wanted, and Plaintiff

---

[1] Plaintiff states that as of the filing of the SAC, the log number and response has been forthcoming in that informal grievance. (ECF No. 32-1 at 10.)

reported he had been attacked by a Norteño gang member and was severely injured and bleeding. (ECF No. 32-1 at 11.)

At 7:45 a.m., Thomas and Powers told the Norteños/Scrappy that Plaintiff had been informing on them by filing grievances and kites about their attempted extortion, and told the Norteños that if they did not beat Plaintiff down they would need to be transferred from WSCC. Then, the Norteño gang members approached Plaintiff's cell again. Plaintiff began screaming for someone to help him. When they reached his door, Kelly opened the door again and allowed several gang members armed with razors and prison shanks to enter Plaintiff's cell. They began stabbing and cutting Plaintiff. Plaintiff passed out and awoke 45 minutes later on a gurney being taken to the infirmary. He was transported to an outside hospital and received approximately 60 stitches and was evaluated for head trauma. (ECF No. 32-1 at 11-12.)

Plaintiff was transported from the hospital to NNCC, where he was housed in the infirmary, and then in the administrative segregation unit. He stayed there until February 2016, when he was transferred to LCC. (ECF No. 32-1 at 12.)

On January 29, 2016, he filed informal grievances against Kelly, Powers and Thomas. (ECF No. 32-1 at 12.)

Plaintiff references the Eighth and Fourteenth Amendments in Count I, but his claims arise from the Eighth Amendment, and the First Amendment insofar as he asserts a retaliation claim in Count I.

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates

receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

"[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations and quotations omitted); *see also Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir.2015) (citing *Farmer*, 511 U.S. at 833). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citing *Rhodes*, 452 U.S. at 347).

Plaintiff states a colorable Eighth Amendment failure to protect claim against Ramirez based on the allegations that Plaintiff had filed an emergency grievance about being transferred to SDCC because it would put him in danger due to his sex offender status, and Ramirez said he hoped Plaintiff would get what he had coming there. Shortly after the transfer, Plaintiff was attacked by Aryan Warrior gang members.

Plaintiff also states colorable Eighth Amendment failure to protect claims against Powers, Byrne, Thomas, Vidaurri, Foster, and Kelly based on the allegations concerning the Norteños at WSCC. These claims are based on allegations that Powers informed the Norteños that Plaintiff was a sex offender, pedophile and baby killer. Plaintiff reported this to Byrne and Thomas in kites, but the kites went unanswered. Plaintiff also told Vidaurri, who said he would speak to the Norteños to try and find a resolution. Instead, Plaintiff was then approached by Scrappy who

threatened Plaintiff with harm if he did not pay them to stay at WSCC. Plaintiff told Thomas about this, and she said she would look into it, but then told Plaintiff to stop bothering her with these complaints, and threatened to write him up if he continued. He also told Vidaurri about what Scrappy said, and Vidaurri told Plaintiff to just pay Scrappy. Plaintiff filed a grievance to Byrne and then Foster about Thomas failing to protect him, which was denied, with no investigation. He reiterated his complaints about the threat from the Norteños to Vidaurri, who told him he had better things to worry about. Kelly twice opened the door to let the Norteños into Plaintiff's cell to attack him. After the first attack, Powers and Thomas told Scrappy that Plaintiff had been informing on them, and he was then attacked again.

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of five elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005))

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Id.* (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)).

Plaintiff states a colorable retaliation claim against Thomas based on the allegations that he told her about the Norteño threats, and she told Plaintiff to stop bothering him or she would right him up; and, after he filed a grievance about this, Thomas moved him into a unit where most of the Norteños lived.

9

**2. Count II**

Plaintiff alleges that between December 1, 2014, and November 6, 2015, he submitted grievances and kites against Powers, Vidaurri, Kelly and Thomas. He claims that as a result of filing these grievances, they retaliated against him by inflaming the Norteños by telling them he was a pedophile, sex offender, and baby killer, who was snitching on them. He further contends that these defendants made the gang members attack Plaintiff in retaliation for these grievances that specifically reported their failure to protect him.

Plaintiff states colorable retaliation claims against Powers, Vidaurri, Kelly and Thomas.[2]

**3. Count III**

Plaintiff alleges that on December 14, 2015, he kited his Caseworker Skulstad (not named a defendant), to ask whether Vidaurri was going to speak to him about the assault on December 7, 2015.[3] On December 18, 2015, Skulstad responded, "Unknown-I told C/O Vidaurri. He said when he has time available." On February 9, 2016, Plaintiff submitted a grievance that Defendants failed to protect him from the Norteños, and intentionally put him in harms way by telling the Norteños he was a sex offender and directing them to assault Plaintiff. He also reported that Vidaurri had failed to come and interview him. On February 12, 2016, R. Mears responded: "Per AR 740 this grievance has been forwarded to the Inspector General's Office for further review. IG Case made." (ECF No. 32-1 at 14.)

On March 14, 2016, Plaintiff submitted a first level grievance, asserting that Defendants failed to protect him and were attempting to cover up the incident by refusing to interview him to identify the perpetrator that stabbed him. Warden Baca responded on March 22, 2016, stating that

---

[2] The claim against Thomas overlaps with the retaliation claim asserted against her in Count I.

[3] Plaintiff uses the date of December 7, 2016, but earlier allegations put the date of the assault as December 7, 2015.

10

Plaintiff was responded to correctly at the first level. Plaintiff submitted a second level grievance complaining about the cover up of the assault. Deputy Director Tristan responded on October 13, 2016, stating that NNCC has made every effort to ensure the matter is properly investigated. (ECF No. 32-1 at 14-15.)

Plaintiff did not get a response from the Inspector General's Office and was not interviewed by Yard Gang Investigator Vidaurri. As a result, Plaintiff submitted another grievance. D. Baze and Warden Baker referred the issue of cover up, failure to protect and failure to investigate to the Inspector General's Office for review/investigation. On August 27, 2017, Inspector General Pamela Del Porto responded: "Your actions, temper and verbal dialog on the tier resulted in the assault on your person. You failed to report any type of security concerns to Department staff. Grievance denied for further IG Investigation." (ECF No. 32-1 at 16.)

Plaintiff does not state any colorable claim against Mears, Baca, Tristan, Baze, Baker or Del Porto. Essentially, Plaintiff disagrees with how his grievances were processed and the outcome the Inspector General conveyed to him. Meares, Baca, Tristan, Baze and Baca told Plaintiff that his complaints were referred to the Inspector General's Office for investigation. Del Porto allegedly told Plaintiff she concluded that further investigation was not warranted. Plaintiff does not have a due process right related to the grievance process which would include the investigation into grievance contentions. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Ramirez v. Galalap*, 334 F.3d 850, 560 (9th Cir. 2003). Therefore, Count III should be dismissed with prejudice as amendment would be futile.

### III. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order as follows:

(1) The motion to amend (ECF No. 32) should be **GRANTED**;

1     (2) The Clerk should be directed to **FILE** the SAC (ECF No. 32-1);

2     (3) Plaintiff should be permitted to **PROCEED** with the following claims against the following defendants in the SAC:

    (a) An Eighth Amendment failure to protect claim against Ramirez in Count I;

    (b) Eighth Amendment failure to protect claims against Powers, Byrne, Thomas, Vidaurri, Foster, and Kelly in Count I;

    (c) A retaliation claim against Thomas in Count I;

    (d) Retaliation claims against Powers, Vidaurri, Kelly and Thomas in Count II.

    (4) Count III and defendants Mears, Baca, Tristan, Baze, Baker or Del Porto, should be **DISMISSED WITH PREJUDICE** for failure to state any claim upon which relief may be granted.

    (5) The Attorney General's Office should be given 21 days to file a notice advising the court and Plaintiff of: (a) the names of the defendants for whom it accepts service; (b) the names of the defendants for whom it does not accept service. For those defendants for whom it does not accept service, the Attorney General's Office shall file the last known address under seal, but not serve the inmate Plaintiff. If the last known address is a post office box, the Attorney General's Office shall attempt to obtain and provide the last known physical address.

    (6) If service cannot be accepted for any of the named defendants, Plaintiff must file a motion identifying the unserved defendant(s), request issuance of a summons, and provide the full name and address for those defendants for whom the Attorney General has not provided a last known address under seal.

(7) If the Attorney General accepts service for any named defendants, they shall file and serve an answer or other respond within sixty days from the date of any order adopting and accepting this Report and Recommendation.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

**IT IS SO ORDERED**.

Dated: November 12, 2019.

                                                                     *William G. Cobb*
                                                                     William G. Cobb
                                                                     United States Magistrate Judge